UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DENNIS KRIEG, | ) |
|    Plaintiff(s), | ) ) ) |
| vs. | ) ) Case No. 4:22-CV-906 SRW |
| KILOLO KIJAKAZI,<br>Commissioner of Social Security<br>Administration, | ) ) ) ) ) |
|    Defendant(s). | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 18. Defendant filed a Brief in Support of the Answer. ECF No. 19. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.    Factual and Procedural Background**

In April of 2019, Plaintiff Dennis Krieg protectively filed applications for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.*, and supplemental security income under Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 175-205, 207-47, 251-59. Plaintiff was born in 1964 and alleged disability beginning February 28, 2019 due to Meniere's disease in his right ear, left ear nerve damage, hearing loss, dizziness and nausea, right knee arthritis, left hip degenerative disease, and a suspected torn rotator cuff. Tr. 19, 175, 304. He subsequently

1

amended his alleged onset date to March 16, 2019. Tr. 41, 284. Plaintiff's applications were denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 96-104, 170, 355.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on May 5, 2021. Tr. 32-69. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Jonathan De Luna. *Id*. at 57-64. On June 28, 2021, the ALJ issued a decision finding Plaintiff not disabled. Tr. 11-28. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 170. On July 15, 2022, the Appeals Council denied his request for review. Tr. 1-7. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

**II.     Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative

3

assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary

sufficiency is not high." *Id*. Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2024. Tr. 16. Plaintiff has not engaged in substantial gainful activity since his alleged amended onset date of March 16, 2019. Tr. 16-17. Plaintiff has the severe impairments of "moderate medial compartment osteoarthritis of the right knee and Meniere's disease." Tr. 17-18. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 18-19.

The ALJ found Plaintiff had the RFC to perform "medium" work as defined in the regulations[1] with the following limitations:

> [L]ift no more than 50 pounds occasionally; lift/carry up to 25 pounds frequently. He can frequently climb ramps or stairs, but only occasionally climb ladders, ropes, or scaffolds. He can only occasionally balance and stoop. He should avoid concentrated exposure to operational control of moving machinery. He should avoid moderate exposure to unprotected heights. He should avoid moderate exposure to hazardous machinery.

---

[1] *See* 20 C.F.R. § 416.967(c) (stating that medium work requires lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds); Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6 (clarifying that medium work generally requires standing or walking, off and on, for six hours and sitting intermittently during the remaining time of an eight-hour workday).

5

Tr. 19. Prior to March 16, 2019, Plaintiff performed several different jobs. While some of those jobs required heavy lifting or frequently climbing ladders or stooping, some of his other prior occupations would not be excluded under the RFC. Relying on VE testimony, the ALJ found Plaintiff was capable of performing his past relevant work as a retail sales clerk (*Dictionary of Occupational Titles* ("*DOT*") No. 290.477-014, semi-skilled, light but performed at medium) and emissions exhaust inspector (*DOT* No. 806.364-010, skilled, light but performed at medium). The ALJ concluded these jobs do "not require the performance of work-related activities precluded by the claimant's residual functional capacity." Tr. 21.

Alternatively, relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff could perform other unskilled work existing in significant numbers in the national economy, including representative occupations such as sandwich maker (*DOT* No. 317.664-010, unskilled, medium, with approximately 51,000 positions nationally), trimmer (*DOT* No. 869.684-066, unskilled, medium, with approximately 221,000 positions nationally), and conveyor feeder [off]bearer (*DOT* No. 921.686-014, unskilled, medium, with approximately 20,000 positions nationally). Tr. 23-24. Consequently, the ALJ concluded Plaintiff has not been under a disability, as defined under the Act, from March 16, 2019 through the date of his decision on June 28, 2021. Tr. 24

**IV.    Discussion**

Plaintiff presents three assignments of error: (1) the RFC was not supported by substantial evidence because the record does not contain any medical evidence addressing Plaintiff's physical ability to function in the workplace; (2) the ALJ failed to properly evaluate the medical opinions of State agent Drs. James Schell and Dorothy Leong; and (3) the ALJ's decision lacked a proper pain evaluation.

### A. Residual Functional Capacity

Plaintiff argues the ALJ failed to develop the record fully and fairly because it does not contain any medical evidence addressing Plaintiff's physical ability to function in the workplace. ECF No. 18 at 2. Plaintiff asserts the only medical opinions in the record providing RFC assessments were from the State agents Dr. James Schell and Dr. Dorothy Leong, who determined Plaintiff did not have any exertional limitations, and which the ALJ discounted as unpersuasive. *Id.* at 3. Rather than developing the record and obtaining additional evidence regarding his functional abilities, Plaintiff argues the ALJ erroneously formulated his RFC based upon the "raw" medical evidence. *Id.* at 3-4.

In support of this argument, Plaintiff first points to the ALJ's discussion of his Meniere's disease. The ALJ addressed the severe impairment as follows:

> In regards to the claimant's Meniere's disease, records show a history of abnormal vestibular testing, labyrinthine hypofunction, disequilibrium, and intermittent dizziness with the September 2019 physical consultative exam showing an abnormal Rinne test with bone conduction being greater than air conduction on both sides suggestive of possible conductive hearing loss and a diagnosis of Meniere's disease. Weber and Whisper testing at that time were both normal and a previous brain and internal auditory canal MRI in late 2018 was normal. The claimant was on antivertigo medication in September 2020.

Tr. 20 (internal citations omitted). Plaintiff argues this discussion is faulty because the ALJ does not explain how the symptoms were accounted for in the RFC. Plaintiff also argues the ALJ did not consider certain abnormal hearing test results from November of 2018; however, the Court notes those records were before the alleged onset date. *See* ECF No. 18 at 5 (citing Tr. 438-39).

Plaintiff also takes issue with the ALJ's determination to not include greater limitations related to his right shoulder pain, which the ALJ found to be a non-severe impairment. The ALJ discussed Plaintiff's right shoulder condition as follows:

7

> As for the claimant's right shoulder, he had full bilateral shoulder range of motion (ROM), intact sensation, normal reflexes, and full bilateral upper extremity strength in September 2019. However, by August 2020, he had a confirmed right rotator cuff tear with associated pain, limited range of motion (ROM), and reduced strength at 4/5. He had surgery (open biceps tenodesis and arthroscopic debridement) on his right shoulder in late October 2020 from the partial rotator cuff tear of the subscapularis tendon and supraspinatus tendon, biceps tendinitis, and severe teres minor muscle atrophy. By late November 2020, he had full, essentially pain free range of motion, adequate pendulums with full elbow/wrist/hand motion, intact distal neurocirculatory exam, and no numbness or tingling, though his bicep muscle was in a flexed condition since it had torn off from the screw put in during surgery. No additional surgery was required. The claimant was on temporary restrictions at that time and through December 2020 to lift no more than 1-2 pounds. He continued to do well with controlled pain and good rotational strength with no instability in early December 2020. At the hearing, claimant testified that he has full range of motion in his right shoulder. Accordingly, the claimant's . . . right rotator cuff tear [is a] non-severe impairment[].

Tr. 20 (internal citations omitted). Plaintiff argues the above evaluation was insufficient because the RFC did not account for his reduced exertional limitations resulting from the shoulder tear, October 2020 surgery, and subsequent recovery period.

Lastly, as to Plaintiff's right knee impairment, he asserts his most recent May 13, 2021 MRI does not support the ALJ's RFC. ECF No. 18 at 8. While the ALJ acknowledged the MRI in the determination, the ALJ did not consider the results in formulating the RFC because it was not included as part of the record. *See* Tr. 20 (citing Tr. 959). The Court notes that even though the ALJ did not address the May 2021 MRI record, he did provide the following analysis regarding the numerous other treatment notes related to Plaintiff's right knee pain:

> As to the claimant's right knee osteoarthritis, a physical consultative exam in mid[-]September 2019 showed right knee pain, intoed gait on the left side with the claimant's ankle deviated medially approximately 30°, the inability to hop on his right foot, and mildly decreased extension of the right knee but otherwise full ROM, full bilateral lower extremity strength, normal and unassisted gait, full squat, normal heel and toe walking, normal tandem walk, and the ability to rise from a seated position without difficulty. A right knee x-ray at that time showed minimal degenerative spurring involving the posterosuperior aspect of the patella, but normal joint spaces, no acute fracture, dislocation, or bony

8

>abnormality, stable and non-tender joints, and no redness, heat, or effusion. A right knee x-ray in late August 2020 showed moderate medial compartment osteoarthritis. Nevertheless, exams generally show a normal unassisted gait since at least February 2020, except in late August 2020 and early September 2020 when an antalgic gait was noted. The claimant was treated conservatively with cortisone injections. The claimant continued to have tenderness to palpation in the medial joint line of the right knee in early May 2021, with crepitus and positive McMurray test, but otherwise full strength at 5/5, intact sensation, and ROM at 0 degrees extension and 115 degrees flexion, normal varus and valgus laxity, and negative patellar glide. Another right knee MRI was ordered but it is not in evidence.

Tr. 20 (internal citations omitted).

The Commissioner filed a response arguing that Plaintiff's points of error fail "because there is no requirement for medical opinion evidence, the record contains more than sufficient evidence to establish his RFC, and the ALJ provided a detailed narrative discussing the medical and nonmedical evidence relied upon to formulate Plaintiff's RFC." ECF No. 19 at 5.

Plaintiff is correct in stating that because the ALJ found the RFC assessments of State agent Drs. James Schell and Dorothy Leong to be unpersuasive, the record is devoid of opinion evidence from a medical source with regard to Plaintiff's physical ability to function in the workplace. However, as the Commissioner points out in the response, the absence of such medical opinion evidence does not require remand. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (there is no requirement that an RFC finding be supported by a specific medical opinion); *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (same); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same); *see also Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011) (In the absence of medical opinion evidence, "medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings."). The ALJ is only required to order medical tests and

9

additional examinations if the available medical records do not provide sufficient evidence to determine if the claimant is disabled. *See McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

Plaintiff's assertion that the ALJ erroneously determined RFC "based upon the raw medical evidence," ECF No. 18 at 4, ignores the fact that federal regulations require the ALJ to evaluate "the extent to which [a claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [a claimant's] symptoms affect [the claimant's] ability to work." 20 C.F.R. §§ 404.1529, 416.929. In other words, the law commits these determinations to ALJs, and here, the ALJ did precisely what the law requires.

The ALJ found Plaintiff retained the RFC to perform a reduced range of medium work. In formulating the RFC, the ALJ explicitly stated he took "into account the claimant's limitations stemming from his severe impairments of moderate medial compartment osteoarthritis of the right knee and Meniere's disease, as well as his non-severe impairments of residuals of stroke, hypertension, and right rotator cuff tear." Tr. 21. The ALJ then explained he accommodated Plaintiff's right rotator cuff tear by limiting him to lifting no more than 50 pounds and lifting and/or carrying no more than 25 pounds frequently; accommodated his right knee impairment by imposing the same lifting/carrying restrictions and limiting him to only frequently climbing ramps or stairs and only occasionally climbing ladders, ropes, or scaffolds; and accommodated his Meniere's disease by limiting him to only occasionally climbing ladders, ropes or scaffolds, occasionally balancing and stooping, and avoiding concentrated exposure to operational control of moving machinery, moderate exposure to unprotected heights, and moderate exposure to hazardous machinery. *Id.*

In formulating such limitations, the ALJ considered Plaintiff's medical history, which is quoted above, in part, and includes numerous medical test results, observations made during physical examinations, and conservative treatment, such as cortisone injections. The ALJ discussed the evidence showing primarily normal and unassisted gait. He had a full range of motion except for mildly decreased right knee extension. He performed a full squat, had normal heel-and-toe and tandem walking, as well as full lower extremity strength. Tr. 20, 498, 499, 501, 803, 807, 816, 820. The ALJ noted Plaintiff's right shoulder improved with treatment, and he had full painless range of motion. Tr. 17, 50, 792, 793. Whisper testing, used to detect hearing impairment, was normal. Plaintiff took antivertigo medication, and he had recovered completely from a stroke. Tr. 20, 48, 798, 806, 810, 815.

Plaintiff testified his Meniere's disease affects him only once or twice a month at most when he has an attack which may last from thirty minutes to three hours; that he is exhausted and does not feel right the next day, but that he is otherwise unaffected. Tr. 42-43, 46-47, 51-52. The ALJ also considered Plaintiff's self-reported activities of daily living, including his ability to stock shelves, walk his dog, perform personal care without difficulty, prepare meals, clean his house, do laundry, drive, go out alone, shop in stores, manage his funds, and paint by numbers. Tr. 20 (citing Tr. 343-48). He and his sister provided care for his elderly mother. Tr. 49, 344. The aforementioned activities reflect abilities consistent with the ALJ's RFC finding here and provide additional support for his decision. *Cf., Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (ability to prepare two-course meals, read, and play internet games indicated that plaintiff could complete simple tasks and interact with others); *Ponder v. Colvin*, 770 F.3d 1190, 1195-96 (8th Cir. 2014) (plaintiff's statement that she could perform light housework, prepare meals, do laundry, and shop "undermine[d] her assertion of total disability").

While the Court acknowledges Plaintiff had some more restrictive limitations during the relevant period due to his shoulder surgery, the ALJ was permitted to not include them in his overall RFC because they were found to be temporary. *See generally Barnhart v. Walton*, 535 U.S. 212, 219-20 (2002) (a claimant's functional limitations must meet the 12-month durational requirement in order to establish disability). For example, Plaintiff had surgery on his right shoulder on October 29, 2020, but by November 24, 2020, treatment notes indicated he had full range of motion and was "essentially pain free," Tr. 792, evidencing the temporary nature of any increased limitations placed upon him as a direct result of surgery.

Prior to his surgery, on September 12, 2019, Plaintiff had undergone a consultative examination with Lilliana Meyer, PA. Tr. 495-501, 504-05. With respect to his right knee, PA Meyer noted that Plaintiff did not use an assistive device for ambulation, did not take prescription medication, and used over-the-counter nonsteroidal anti-inflammatory medication as needed. Tr. 498. He demonstrated a normal tandem walk and station, hopped on his left foot but not his right, performed a full squat, rose from a chair without difficulty, and needed no assistance getting on and off the examination table. Tr. 499. He had normal hearing with a normal whisper test. Tr. 499- 500. He had mildly decreased right knee extension, but his range of motion was otherwise full, even though he complained of pain in his right shoulder with internal and external rotation. Tr. 498-505.

Plaintiff's brief argues that his right shoulder created a disability for more than 12 months, between March of 2018 and December of 2020. ECF No. 18 at 7. However, Plaintiff ignores the ALJ's reliance on the September 2019 examination which showed a full range of motion with the right shoulder, albeit with some reported pain. Tr. 17, 498-505. The ALJ further noted that in August 2020, Plaintiff was diagnosed with a right rotator cuff tear with associated

12

pain, limited range of motion, and reduced strength. Tr. 17. The injury was repaired by surgery in October 2020 and fully functional by December 2020. *Id.* Plaintiff fails to demonstrate a period of disability exceeding 12 months with respect to the right shoulder.

As to the May 2021 MRI, the Court does not find its absence warrants remand. The medical record provides substantial evidence regarding Plaintiff's impairments to support the ALJ's decision. Since the Court may not reverse an ALJ's decision merely because substantial evidence in the record supports a contrary outcome or because this Court might have handled the case differently, *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011), the ALJ's failure to request a two-page MRI examination record referenced in one treatment note did not prejudice Plaintiff.

This Court concludes the ALJ properly evaluated the record taken as a whole and accommodated the limitations supported by the evidence in his RFC. The record evidence, including objective medical findings, examination findings, Plaintiff's response to treatment, and his activities of daily living provide substantial evidence in support of his RFC finding. No additional medical opinion was required, and no further development of the record was necessary. An ALJ has a duty to ensure the record is fully developed. 20 C.F.R. §§ 416.913, 416.920. Just because the evidence does not say what is desired, does not mean the ALJ failed to develop the record. *See Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) (reversal due to failure to develop the record is warranted only where such failure is unfair or prejudicial). In cases where the evidence is consistent and sufficient to determine disability, no further development is required. *See* 20 C.F.R. §§ 404.1520b and 416.920b.

### B. Medical Opinion Evidence

Plaintiff asserts the ALJ further erred by finding the opinions of State agent Drs. Schell and Leong to be unpersuasive without explaining how the supportability and consistency factors were considered. ECF No. 18 at 10-11.

On October 1, 2019, Dr. Schell opined that Plaintiff had no exertional, manipulative, visual, or communicative limitations. Tr. 75-76, 85-86. However, he did find Plaintiff had the postural limitations of frequently climbing ramps and stairs but only occasionally climbing ladders, ropes, and scaffolds, balancing, and stooping. *Id*. Dr. Schell further indicated Plaintiff should avoid concentrated exposure to hazards. Tr. 76, 86. Plaintiff's postural and environmental limitations were due to Meniere's disease only. Tr. 76. On reconsideration, Dr. Leong agreed with Dr. Schell's findings via a half-page sheet containing eight checkmark categories with no requirement for a narrative explanation. Tr. 507.

The ALJ found both opinions not persuasive because they were "not supported by, nor consistent with, additional medical records that were received after his opinion was given that show the claimant has exertional limitations, more fully discussed above." Tr. 21. Rather, the ALJ found that Plaintiff had other limitations related to impairments in addition to his Meniere's Disease. The ALJ applied essentially the same postural limitations recommended by Dr. Schell, but the ALJ also added the exertional limitations of not lifting more than 50 pounds occasionally, and lifting or carrying up to 25 pounds frequently; thus, limiting Plaintiff to medium work. Tr. 19. While Dr. Schell acknowledged Plaintiff's complaints of these physical limitations, he imposed no exertional limitations. Tr. 75-77.

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states the Social Security

14

Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

The rules make clear that supportability and consistency are the "most important factors;" therefore, an ALJ must explain how he considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how she considered the remaining factors. *Id. See Brian O v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

The Court cannot find error in the ALJ's evaluation of the opinions of Drs. Schell and Leong. "The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Trosper v. Saul*, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021). The ALJ's RFC is very consistent with the limitations noted by Drs. Schell and Leong. However, the ALJ found those

15

opinions to be unpersuasive because there was also evidence in the record to show that Plaintiff had more severe exertional limitations due not only to his Meniere's disease, but also because of his right shoulder rotator cuff tear and right knee osteoarthritis. The ALJ discussed those records throughout his determination as discussed in detail above, and in a manner consistent with the regulations.

Thus, read as a whole, the ALJ's determination addresses numerous medical records showing that the State agent opinions were not supported or consistent with treatment notes submitted after the 2019 RFC assessments were drafted. Therefore, the Court finds no error as to the ALJ's evaluation of the administrative findings.

**C. Pain Evaluation**

Lastly, Plaintiff argues the ALJ erred in evaluating his pain. Plaintiff asserts the ALJ must make an express "credibility" determination detailing reasons he discredited his testimony regarding pain and discuss the *Polaski* factors. ECF No. 14 at 8-9. Plaintiff contends the ALJ did not explain how his activities of daily living were inconsistent with his self-reports of pain, nor did he address the *Polaski* factors.

As an initial matter, Social Security Ruling 16-3p[2] eliminated the word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529. The Rule incorporates the familiar factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) that previously guided an ALJ's analysis of subjective complaints, including: objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency and intensity of the symptoms (*i.e.*, pain); (3)

---

[2] The revised Ruling became effective on March 27, 2017. It applies to determinations or decisions made by the Social Security Administration on or after March 28, 2016.

precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019).

If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints. *Id.* If the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to *Polaski* or discuss every factor in depth. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

Although the ALJ did not cite specifically to *Polaski*, he affirmatively stated in his decision that he considered all of Plaintiff's symptoms based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 16-3p. Tr. 19. The adjudicator is "not required to discuss each *Polaski* factor as long as '[he] acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). In formulating the RFC, the ALJ explicitly considered the objective medical evidence of record, including his treatment and progress with symptoms, the wide variety of activities of daily living plaintiff was able to perform, his functional limitations, temporary restrictions due to his bicep tear, conservative treatment with cortisone injections, and use of anti-vertigo medication. Although activities of daily living are not sufficient on their own to prove a plaintiff can work, they can appropriately support the ALJ's decision when considered in conjunction with the medical record. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015). Consequently, the Court finds no error in the ALJ's evaluation of Plaintiff's pain.

17

The Court finds the ALJ appropriately discounted Plaintiff's allegations of disabling pain based on the objective medical evidence. The Eighth Circuit has recently held that an ALJ "is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (citation omitted). The ALJ adequately discussed the medical evidence of record. Contrary to Plaintiff's assertions that the ALJ did not discuss the *Polaski* factors, the ALJ noted the Regulations referencing those factors. The Court finds no error as to the ALJ's evaluation of Plaintiff's pain.

### V. Conclusion

Based on a careful review of the parties' briefings and the underlying record in this action, the Court finds the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record as a whole and is not conclusory. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may also support a different outcome. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (citing *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992)).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Dennis Krieg's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 27th day of July, 2023.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE